## · JOHN SIMPSON

### *v.*

## THE HANSELL-ELCOCK FOUNDRY COMPANY.

*Opinion filed October 23, 1907.*

TRIAL—*when court should instruct jury to find for the defendant in personal injury case.* An instruction to find for the defendant in a personal injury case should be given where the negligence averred is that the defendant's foreman improperly gave a certain signal to the hoisting engineer, but the proof shows that such signal, if given, .was not obeyed by the hoisting engineer and had nothing to do with· the plaintiff's injury.

WRIT OF ERROR to the Branch Appellate Court for the. First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

J. A. BLOOMINGSTON, for plaintiff in error.

HORTON, BROWN & MILLER, for defendant in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

This was an action on the case brought by ·plaintiff in error to recover damages for a personal injury. The plaintiff recovered a judgment, which the Appellate Court, upon appeal, reversed without remanding the cause, on the ground that the court should have instructed the jury, as requested by the defendant, to find it not guilty. This writ of error is prosecuted to reverse that judgment of affirmance.

The plaintiff was a structural iron setter, working for the defendant in the erection of a building in Chicago. At the time of his injury a column had just been placed under a truss which supported the roof, and the foreman wanted it taken down. The column was an eight-inch I-beam, sixteen feet long, weighing eighteen pounds to the foot. The base rested on a concrete foundation, and at its top, where the truss rested, were certain lugs, one side of which was bolted

to the head of the I-beam and the other extended at right angles, to be bolted to the truss. To take down the column from under the truss it was necessary to raise it above the lower chord of the truss. This was done by passing a line around the head of the column and raising it off its foundation by a hoisting engine located about one hundred feet away. Albert Hanson was in charge of the men doing the work and gave the signals to lower or raise the column. In case it was necessary to hoist the load, power was applied from the engine, and in case of lowering the load the man at the "nigger-head," which is a cylinder at the side of the engine around which the rope or line passes, released the line, thus allowing the load to descend. The column had been raised from its foundation and suspended with its head about a foot above the flange of the lower chord of the truss. The plaintiff in error and one Halverson, under the direction of the foreman, took hold of the column at the base and pulled it out so that it could be lowered. As the column descended it caught by the lug on its head upon the flange of the truss, thus allowing the line to become slack. The plaintiff in error and Halverson continued to pull the base of the column, the head slipped off the truss and the column dropped a short distance, striking the plaintiff in error upon the foot.

The negligence averred in the declaration was, that the foreman "then and there ordered and signaled the hoisting engineer to operate said hoist, and by reason of his negligence in so doing, the plaintiff, who was exercising all due care and caution for his own safety, was suddenly struck by the said beam being lowered upon him," etc.

Simpson testified that he heard the foreman call to the man at the nigger-head, "Why don't you lower away?" and immediately afterwards the column came down on his foot. It was very heavy and it was necessary for him to apply all of his strength to it. He did not see how or where it caught, and practically all he knew was that it came down

on his foot. Halverson testified that the column started to descend and then stopped. He could not see, and did not know, what caused it to stop, but he knew that it was caught somewhere. He and Simpson kept pulling at the base until it was loose. The slack in the rope permitted the beam to fall about one foot. Hanson, the foreman, testified that he did not notice right away that the column was caught and it got a little more slack than was necessary. As soon as he saw it was caught he gave a signal to stop lowering. He gave no signal to go ahead until the column was released, and it was not two seconds after it was caught before the signal to stop was given. Johnson, the nigger-head operator, testified that Hanson gave him the signal to lower with his hand. He continued to lower until the strain got off the cable. He knew immediately that the column was caught and held the rope fast until it was released and the slack in the cable taken up, when he lowered it to the ground. During the time the column was caught Hanson signaled to him to lower, but he did not obey the signal.

This is all of the evidence, and it does not tend to prove that the plaintiff was injured as a result of the foreman's negligence in signaling the engineer to operate the hoist. The fact that the foreman, after the column caught, signaled the nigger-head man to continue to lower does not prove the charge in the declaration. The signal was not obeyed and did not cause the injury. Johnson had hold of the rope and could tell instantly, by the difference in pressure, when the column caught. He was in a better position to know this fact than the foreman, who was looking at the top of the beam. He held the rope until the column was released, and the signal had nothing to do with the injury. The court should have given the instruction to find the defendant not guilty, and the Appellate Court committed no error in so holding.

The judgment will be affirmed.        *Judgment affirmed.*